UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| COLTON T. VIBBERT,<br><br>    Plaintiff,<br><br>       v.<br><br>JOHN GALIPEAU, DENIS GULLESON, TRACY CORNETT, K. WATTS, and JACK HENDRIX,<br><br>    Defendants. | No. 3:24 CV 480 |

## OPINION and ORDER

Colton T. Vibbert, a prisoner without a lawyer, filed a complaint, alleging he was held in segregation for several years without receiving a meaningful review of his placement there. (DE # 1.) "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Vibbert alleges that in September 2020, a cell phone and a homemade knife were found in his cell at Indiana State Prison ("ISP"), and he was sanctioned with disciplinary segregation through December 23, 2020. But when his segregation time was up, he wasn't released. Instead, he remained in segregation at ISP for the next seven

months. That whole time, he says he never received a behavioral modification plan or a 30-day review of his placement in segregation.

Vibbert remained in segregation at ISP until April 29, 2021, when he was transferred to Westville Control Unit ("WCU") and placed on department-wide restrictive status pending a disciplinary conduct report. On August 10, 2021, Vibbert was found guilty of the conduct report but was not sanctioned with any segregation time. Despite not being sanctioned to segregation time, he remained on department-wide restrictive status.[1]

Vibbert alleges that while on department-wide restrictive status, he was confined to his cell alone for 24 hours a day, except for four times a week when he was allowed to shower and five times a week when he was allowed one hour of recreation, which was held in a room the same size as his cell. He alleges the light in his cell remained on 24 hours a day. He was not allowed to cover it, and the light disrupted his sleep. His meals were given to him through a slot in the door, and he ate all his meals alone in his

---

[1] Restrictive housing (*i.e.*, segregation) is used for disciplinary purposes when segregation time is imposed after a hearing on a conduct report, or it can be used administratively, as a "form of housing for offenders whose continued presence in the general population would pose a serious threat to life, property, self, staff, or other offenders, or to the security or orderly operation of a facility." Ind. Dep't of Corr. Policy & Admin. Proc., *Administrative Restrictive Status Housing*, No. 02-01-111 (eff. Oct. 1, 2021), at p.2, available at https://www.in.gov/idoc/files/policy-and-procedure/policies/02-01-111-ARSH-10-1-2021.pdf (last visited Nov. 13, 2024). Department-wide administrative restrictive status housing, as opposed to a unit within a facility designated as restricted housing, is designed to house "offenders at a facility who have a history of battery on others or who, in the opinion of Department or facility staff, present an extraordinary threat to themselves or others or who present special safety and security concerns (e.g., seriously injuring staff or offenders, participating in a hostage situation, identified as a security threat group leader, heavily involved in trafficking or having a lengthy history of serious [Class A and/or Class B] disciplinary code violations)." *Id.* at 4. The policy mandates periodic review of an administrative placement. *See id.* at pp.14-15.

2

cell. He was not permitted to have contact visits, and the only physical contact he had with anyone was when a correctional officer would handcuff him and attach a "dog leash" when he would leave his cell. (DE # 1 at 7.) He did not have a conduct report, yet he was subject to the same restrictions as those on disciplinary segregation. He was scared and stressed out by the frequent outbursts of inmates housed near him who had psychological problems.

Vibbert alleges his caseworkers never provided him with a behavioral modification plan or instructions on what he had to do to be released off of department-wide restrictive status. He alleges he did not receive a meaningful review of his placement; he says the 30-day reviews he received were a sham and a pretext for indefinite segregation. Prison officials allegedly ignored his present and future behavior and used past events alone to justify his indefinite confinement in segregation. Vibbert asserts his status reviews were frozen in time, forever rehashing information addressed at his initial Administrative Segregation determination. The 30-day reviews attached to the complaint, spanning from October 2022 through March 2024, are consistent with his allegations. (DE # 1-1 at 8-22.) The attachments also show that Vibbert was transferred to New Castle Correctional Facility in April 2024, meaning he was in department-wide restrictive status in WCU for approximately three years. (*Id.* at 4.)

Vibbert has plausibly alleged that his long-term confinement in restrictive housing implicates a liberty interest protected by the Fourteenth Amendment. *See Wilkinson v. Austin*, 545 U.S. 209, 224 (2005). In such a case, due process requires periodic review of whether an inmate's placement in administrative segregation

3

continues to be appropriate so that it does not become "a pretext for indefinite confinement of an inmate." *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983). The Constitution requires only an "informal and nonadversary periodic review (the frequency of which is committed to the discretion of the prison officials) that keeps administrative segregation from becoming a pretext for indefinite confinement." *Isby v. Brown*, 856 F.3d 508, 525 (7th Cir. 2017) (quotation marks omitted). Although a statement of reasons for the continued placement is not constitutionally required, the review must be "an actual review—*i.e.*, one open to the possibility of a different outcome[.]" *Id.* at 528. "[P]rison officials must look to the inmate's present and future behavior and consider new events to some degree to ensure that prison officials do not use past events alone to justify indefinite confinement." *Id.* (quoting *Proctor v. LeClaire*, 846 F.3d 597, 611 (2d Cir. 2017)).

Although Vibbert plausibly alleges a violation of his due process rights, he may not proceed against the 20 defendants he named in this lawsuit. "When a prisoner sues government defendants, we recommend that the district court assess whether joinder is proper under Rule 20 before considering the merits." *Dorsey v. Varga*, 55 F.4th 1094, 1107 (7th Cir. 2022). The defendants who worked at ISP (Warden Ron Neal, Unknown Unit Team Manager, Unknown Caseworker, and Unknown Classification Officer) will be dismissed. The complaint alleges no connection between the classification decisions at ISP and the classification decisions at WCU to keep him in department-wide restrictive status. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (unrelated claims

against unrelated defendants belong in different lawsuits). The decisions by individuals at different facilities are not related.

Turning to the other defendants, to be held liable under 42 U.S.C. § 1983, each one must have personal involvement in the alleged constitutional violation. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) ("For a defendant to be liable under section 1983, she must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights."). This requires more than simply knowing about a potential constitutional violation:

> Public officials do not have a free-floating obligation to put things to rights, . . . .. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen.

*Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). The exhibits attached to the complaint, which include several 30-day reviews, grievances, and a classification appeal, provide a plausible basis to conclude that the following defendants may have had personal involvement in the alleged violation: Caseworker Denis Gulleson, Unit Team Manager Tracy Cornett, Deputy Warden K. Watts, former Warden John

5

Galipeau,[2] and IDOC Executive Director of Classification Jack Hendrix. Vibbert may proceed against them on a claim for a due process violation.

As to the remaining defendants, Vibbert alleges nothing more than he alerted them to the alleged violation. For example, he alleges he "spoke personally numerous times to Captain Lewis, Captain Farley, Major Cornett, Deputy Warden Gann, Deputy Warden K. Watts about the meaningless reviews . . . yet nothing ever changed." (DE # 1 at 9.) But, other than Deputy Warden Watts, mentioned above, the complaint does not provide a basis for the court to infer that these custody officers had a role in determining whether Vibbert would remain in department-wide restrictive status or not. Similarly, Vibbert alleges "White, Hull, Cornett, Carroll, Krause, Malfease, and Gulleson were all caseworkers at Westville Control Unit and Unit Team Manager and were responsible for conducting meaningful periodic reviews yet failed to do so." (*Id.* at 10.) But only Unit Team Manager Cornett and Caseworker Gulleson have some connection to Vibbert's particular case, and there are no additional facts alleging that the others were involved in Vibbert's review. Finally, WCU Classification Officer Williams will also be dismissed. She is one of several supervisory defendants whom Vibbert alleged "failed to supervise and properly train caseworkers and Unit Team

---

[2] In addition to naming former Warden Galipeau as a defendant, Vibbert includes the current warden, Jason Smiley. However, Smiley became warden on February 2, 2024, just two months before Vibbert was transferred. *See Winters v. Hendrix*, No. 3:23-CV-989-PPS-JEM, 2024 WL 1111626, at *1 n.2 (N.D. Ind. Mar. 13, 2024). If he had been there longer, it would be reasonable to assume he played a role similar to Warden Galipeau in the process and allow a claim to proceed against him. But he would have been there for only two or three reviews, which ended up with Vibbert being transferred. In the absence of specific facts connecting him to Vibbert's review, Warden Smiley will be dismissed for lack of personal involvement.

Manager on how to conduct meaningful periodic reviews." (*Id.*) But nothing, except perhaps her title, suggests this is within her job description. And since Vibbert alleges this failure to supervise and train also applies to the Warden and two Deputy Wardens, the complaint provides no basis to ascribe this duty to Classification Officer Williams in particular.

In sum, Vibbert will be allowed to proceed against Caseworker Denis Gulleson, Unit Team Manager Tracy Cornett, Deputy Warden K. Watts, former Warden John Galipeau, and IDOC Executive Director of Classification Jack Hendrix, for being held in segregation at WCU for several years without a meaningful review, in violation of the Fourteenth Amendment.

Additionally, Vibbert seeks to raise claims under the Eighth Amendment and the Fourteenth Amendment's Equal Protection Clause based on the food he was served while at WCU. He asserts that, unlike inmates in general population who received a different breakfast that is hot and fresh each day, he received the same breakfast every day. And that breakfast was made the day before and stored in the hallway without being wrapped or temperature controlled. When he received the breakfast trays, the bread would be hard, the cereal would be stale, and the peanut oil separated from the peanut butter from sitting for so long.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). "[T]he Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), but inmates are entitled to

7

adequate food to meet their nutritional needs. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Under the Eighth Amendment, inmates are entitled to food adequate to meet their dietary needs, but not to food of their choosing or food "that is tasty or even appetizing." *Williams v. Berge*, 102 F. App'x 506, 507 (7th Cir. 2004); *see also Isby*, 856 F.3d at 522. In determining whether the adequacy of the food amounts to a constitutional violation, "a court must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). If the provision of food dips below the constitutional standard, the prisoner must then identify a defendant who acted with deliberate indifference to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). The allegations in the complaint do not amount to an "extreme deprivation of basic human needs required to satisfy Eighth Amendment standards." *Isby*, 856 F.3d at 522. Vibbert has not plausibly alleged that the overall diet he received was nutritionally inadequate or otherwise presented a danger to his health.

Similarly, the difference in food served to inmates in general population and to inmates on department-wide restrictive status does not state a claim under the Equal Protection Clause of the Fourteenth Amendment. Because the two groups of inmates (those in department-wise restrictive status and those in general population) are not treated differently because of membership in a suspect class, rational basis review applies. *See Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016). "Prison classifications are presumed to be rational and will be upheld if any justification for them can be conceived." *Id.* To uphold governmental conduct under rational basis review, the court

"need only find a reasonably conceivable state of facts that could provide a rational basis for the classification." *Indiana Petroleum Marketers & Convenience Store Ass'n v. Cook*, 808 F.3d 318, 322 (7th Cir. 2015). The logistical challenges in serving food to inmates in restrictive status as opposed to inmates in general population provide a rational basis for the differential treatment. Vibbert does not state an equal protection claim.

Vibbert is not proceeding in forma pauperis. Therefore, the court will not serve the defendants pursuant to 28 U.S.C. § 1915(d). Rather, it is his obligation to serve the defendants with a copy of the complaint and this screening order as provided by Federal Rule of Civil Procedure 4.

For these reasons, the court:

(1) **DISMISSES WITHOUT PREJUDICE** Ron Neal, Unit Team Manager, Caseworker, and Classification Officer under Fed. R. Civ. P. 21;

(2) **GRANTS** Colton T. Vibbert leave to proceed against Caseworker Denis Gulleson, Unit Team Manager Tracy Cornett, Deputy Warden K. Watts, former Warden John Galipeau, and IDOC Executive Director of Classification Jack Hendrix, in their individual capacities for compensatory and punitive damages for being held in department-wide restrictive status in the Westville Control Unit from approximately April 2021 through April 2024 without a meaningful review in violation of the Fourteenth Amendment;

(3) **DISMISSES** all other claims;

(4) **DISMISSES** defendants White, Hull, Carroll, Krause, Malfese, Williams, Smiley, Kenneth Gann, Gary Lewis, Farley, and Cornett;

(5) **DIRECTS** the Clerk to sign and seal summons for Caseworker Denis Gulleson, Unit Team Manager Tracy Cornett, Deputy Warden K. Watts, former Warden John Galipeau, and IDOC Executive Director of Classification Jack Hendrix and send them to Colton T. Vibbert; and

(6) **ORDERS**, under 42 U.S.C. § 1997e(g)(2), Caseworker Denis Gulleson, Unit Team Manager Tracy Cornett, Deputy Warden K. Watts, former Warden John Galipeau, and IDOC Executive Director of Classification Jack Hendrix to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED.**

Date: November 20, 2024

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT